FILED

2018 JUN -4 PM 12:40

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CASE NO. 3:18 CV 714 - J - 32JBT

$54,540.00 IN UNITED STATES CURRENCY;

Defendant.

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff United States of America brings this complaint and alleges upon information and belief as follows:

## I. NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America the sum of $54,540.00 in United States Currency (defendant funds).

2. The defendant funds were seized on November 13, 2017, in Jacksonville, Florida and are in the government's custody, having been

deposited into the United States Customs and Border Protection Suspense Account on November 15, 2017.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

4. This Court has *in rem* jurisdiction over the defendant funds because pertinent acts giving rise to the forfeiture occurred in the Middle District of Florida. 28 U.S.C. § 1355(b)(1)(A).

5. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395(a), because the defendant funds were seized within the Middle District of Florida, Jacksonville Division.

6. Because the defendant funds are in the government's possession, custody, and control, the United States requests that this Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). Rule G(3)(b)(1) requires the Clerk to issue a warrant of arrest *in rem* for defendant property if such property is in the government's possession, custody, or control.

7. After the Court issues the warrant of arrest *in rem*, the United States will execute the warrant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## III. STATUTORY BASIS FOR FORFEITURE

8. The defendant funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because they constitute proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance in violation of 21 U.S.C. §§ 841 and 846.

## IV. FACTS

9. Specific details of the facts and circumstances supporting the forfeiture of the defendant funds have been provided by United States Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent Ashley Wilson. She states as follows:

10. Agent Wilson has been a Special Agent with HSI since October 2007. She is currently assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida, where she conducts a variety of investigations. Prior to this assignment, she was assigned to the Office of the Deputy Special Agent in Charge, Laredo, Texas for approximately six years also as a Special Agent.

11. Based upon her training and experience, she is knowledgeable about the various ways in which narcotics traffickers import, store, manufacture and distribute drugs and finance drug operations. She is also knowledgeable about the currency and other proceeds derived from large-scale narcotics trafficking. She is aware, through her experience and training, that narcotics traffickers transport currency associated with drug transactions in a concealed manner to avoid detection by law enforcement and that often the currency is banded together in a manner associated with narcotics trafficking.

A. **<u>Seizure of Currency at Jacksonville International Airport</u>**

12. SA Wilson was a member of the North Florida High Intensity Drug Trafficking Area Money Laundering Task Force for approximately three years. As a result of this affiliation, she was contacted by Jacksonville Aviation Authority Police Department (JAAPD) Detective B. Montgomery in reference to a seizure of $54,540.00 of United States currency from Bernardo Fernandez at the Jacksonville International Airport on November 13, 2017.

13. Detective Montgomery stated that on November 13, 2017, Transportation Security Administration (TSA) Officers encountered Fernandez during a routine, pre-flight passenger screening. An X-ray

screening of Fernandez's carry-on luggage revealed an anomaly in the luggage as it passed through the x-ray machine. They opened the luggage and discovered the concealed currency. Subsequently, Supervisory Transportation Screening Officer V. Ramos advised JAAPD Officer J.R. Pledger of the discovery of the currency. JAAPD Officer Pledger was assigned to the TSA security checkpoint and made contact with Fernandez. Fernandez was identified by his Washington driver's license.

**B. Investigation by Jacksonville Aviation Authority Police**

14. JAAPD Officer Pledger observed the United States currency in Fernandez's carry-on luggage after it had been opened by TSA officers.

15. JAAPD Officer Pledger questioned Fernandez about the U.S. currency and asked why he had so much currency on him. Fernandez told JAAPD Officer Pledger he flew from Seattle, Washington to Jacksonville to purchase a 2018 Dodge Challenger. Fernandez further stated the vehicle had mechanical issues that were going to be repaired and he did not feel comfortable leaving the currency. Fernandez added he was flying back to Seattle until the issues were fixed. Fernandez told JAAPD Officer Pledger he had approximately $15,000.00 in his carry-on luggage.

16. JAAPD Officer Pledger asked Fernandez where he got the currency. Fernandez stated he got the money from the bank, but also said his family owns two Mexican food restaurants in the Seattle area and he got some of the money from them to buy the vehicle. JAAPD Officer Pledger contacted JAAPD Detective B. Montgomery and advised him of the discovery of the currency.

17. JAAPD Officer Pledger reported there were five individual bundles of U.S. currency in various denominations that were wrapped with different colored rubber bands. Additionally, Fernandez had one large, vacuum sealed bag of U.S. currency, which appeared to consist of multiple bundles of currency in $20.00 denominations that were also wrapped with different colored rubber bands. JAAPD Officer Pledger noticed the packaging of the currency was not consistent with the way banks bundle currency for customers.

18. Detective Montgomery responded to the TSA security checkpoint and had a brief conversation with Fernandez. Detective Montgomery asked Fernandez if he would go to the JAAPD office to continue talking about the currency. Fernandez voluntarily agreed and walked to the JAAPD office on the lower level of the airport with Detective Montgomery.

19.     While in the JAAPD office, Detective Montgomery and JAAPD Officer Pledger took photographs, several of which are attached below, of the U.S. currency. Multiple bundles of U.S. currency, mostly in $10.00, $20.00, $50.00, and $100.00 denominations, were discovered in Fernandez's carry-on luggage. Fernandez was carrying a light blue and brown bag and several bundles of U.S. currency were concealed inside his socks that were packed inside the bag.





20. Fernandez was taken to an interview room, and Detective Montgomery noticed Fernandez was texting someone on his cell phone. Detective Montgomery asked Fernandez if he could see his cell phone and Fernandez agreed. Detective Montgomery observed a text thread to an individual named "Josh." In the text thread, Fernandez said (paraphrased), "I told them it was $15,000.00, but it is probably more like $30,000.00." At approximately 4:08 p.m., Detective Montgomery advised Fernandez of his constitutional rights and both of them signed the JAAPD Constitutional Rights Form. Fernandez was advised by his attorney, Joshua Brumley, to not make any statements.

21. Jacksonville Sheriff's Office (JSO) Canine Officer B. R. Smith was dispatched, upon request, to the Jacksonville International Airport with his canine partner, "Kona," to conduct a narcotic money sniff. According to the Jacksonville Sheriff's Office Canine Deployment Report, JSO Canine Officer Smith conducted a "four envelope line up." During the "four envelope line up," Canine "Kona" indicated on envelope number four, which contained the U.S. currency that was in Fernandez's possession. An indication means Canine "Kona" identified the odor of narcotics on the envelope containing the U.S. currency that Fernandez concealed in his

carry-on luggage. Canine "Kona" was trained to detect several different types of narcotics, to include marijuana.

22. According to JAAPD Officer Pledger, Fernandez was more concerned about missing his flight than leaving behind the large amount of U.S. currency he had in his possession, so he continued his travel to Seattle, Washington. The U.S. currency was seized by JAAPD and transported to the JSO property room. The U.S. currency was counted at the JSO property room using an electronic money counter and JAAPD Officer Pledger was advised the total amount of currency was $54,540.00.

23. On November 14, 2017, Detective Montgomery contacted HSI SA Wilson and informed her of the currency seizure. The case was turned over to HSI for further investigation. On November 15, 2017, HSI SAs Wilson and Harry Williams met Detective Montgomery at the JSO property room. The JSO Property custodians provided SA Wilson with a check made payable to U.S. Customs and Border Protection in the amount of $54,540.00, which she transferred to the United States Customs and Border Protection's Office of Fines, Penalties, and Forfeitures.

24. On December 7, 2017, United States Customs and Border Protection's Office of Fines, Penalties, and Forfeitures sent a notice of seizure to Fernandez, but the notice was returned as undeliverable. On December

19, 2017, a notice of seizure was forwarded to the local attorney on file, Michael Stanski.

C. **Additional Investigation by Declarant**

25. SA Wilson conducted additional record checks on Fernandez. According to the Washington State Department of Licensing, Fernandez is already the registered owner of a 2018 Dodge Challenger. Fernandez's story about purchasing a 2018 Dodge Challenger in Jacksonville did not make sense as there are multiple locations much closer than Jacksonville to purchase that type of vehicle since it is not a classic car or particularly unique. Additionally, a newer vehicle should not have mechanical issues. Fernandez also did not provide any information to law enforcement on the location of the dealership in Jacksonville or from whom he was purchasing the vehicle. SA Wilson believed Fernandez made up a story about purchasing a vehicle in Jacksonville in an attempt to conceal the true purpose in transporting the currency. It is believed the currency was either derived from the sale of narcotics, specifically marijuana, or was used or intended to be used to purchase narcotics.

26. Further investigation revealed Fernandez has received cash deposits into his bank accounts from various cities and states across the

United States. The cash deposits range in amounts of $1,600.00 to $7,000.00, and are followed by cash withdrawals conducted by Fernandez in Washington on the next day or several days later. For instance, during the approximate time period of March, 2017 to June, 2017, Fernandez received approximately 29 cash deposits into one account, totaling approximately $108,509.00. The cash deposits were conducted in Florida, Illinois, Minnesota, and Nevada by unknown individuals in amounts ranging from $185.00 to $8,400.00. Fernandez then made approximately 21 cash withdrawals in amounts ranging from $100.00 to $8,410.63. In all, the withdrawals totaled approximately $108,020.00. All of the cash withdrawals were conducted in Washington on the same day, or within a couple of days, of the cash deposits. This activity occurred in less than a three-month period.

27.     Based on her training and experience, SA Wilson knows this type of activity, the rapid movement of cash through bank accounts, is known as a funnel account and is also indicative of criminal activity. It is known as a convenient way for narcotics traffickers to quickly transport proceeds across the United States. Furthermore, based on SA Wilson's training and experience, she knows funnel accounts are typically associated with the sale, purchase, and distribution of marijuana.


28. SA Wilson requested information from T-Mobile regarding phone number (253) 397-7759, the phone number Fernandez provided to law enforcement and stated was his. According to T-Mobile, the account was activated on August 9, 2016 and the name on the account is Bernie's Music Entertainment with an address of 2XX SW Roxbury Street, Seattle, Washington 98106. An open source search of the address revealed it is a residence that is associated to individuals other than Fernandez. Additionally, it is a different address than the one Fernandez provided to law enforcement as his home address.

29. According to the Washington Secretary of State, Corporations Division, Bernie's Music Entertainment was created as a Limited Liability Company on March 1, 2017. Fernandez is listed as a governor of the business. On April 1, 2018, Bernie's Music Entertainment received a delinquency letter from the Washington Secretary of State stating the business did not file an annual report and is no longer in active status.

30. SA Wilson knows from her training and experience that narcotics traffickers commonly list names and addresses other than their own or use a company name on their cell phone accounts in order to avoid law enforcement detection. As an example, if a narcotics customer is arrested, it is common for law enforcement to discover the name or address listed on the

cell phone account is either fictitious or in the name of a company that no longer exists in an attempt to distance themselves from the narcotics activity.

31. Further, SA Wilson learned from communications during this investigation with a Seattle HSI Agent, who is part of a HIDTA Enforcement Group, that both DEA and HSI have active criminal investigations involving the domestic trafficking of marijuana grown in Washington. In multiple investigations, Florida has been the confirmed destination for marijuana grown in Washington. SA Wilson learned that law enforcement officers in Seattle have observed local residents operating large marijuana grow operations and distributing their product up and down the eastern seaboard of the United States. SA Wilson learned that these individuals are using all forms of interstate commerce to distribute the marijuana from Washington. The marijuana is transported on commercial airlines in checked baggage; it is mailed/shipped using all of the standard carriers (USPS/FedEx/UPS); it is driven via interstate highway. In the past two years, marijuana originating from Washington has been seized at both the Jacksonville and Orlando airports, and there have been seizures at both airports of bulk currency destined for Seattle. It is common knowledge among federal investigators and their state and local law enforcement partners in Washington that numerous

individuals and/or organizations are criminally exploiting Washington's marijuana laws.

## V. CONCLUSION

32. As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the defendant funds are proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance, in violation of 21 U.S.C.§§ 841 and 846 and, therefore, are subject to forfeiture pursuant to 21 U.S.C.§ 881(a)(6).

WHEREFORE, the United States of America requests that process in accordance with the provisions of Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, be issued against the defendant funds to enforce the forfeiture and that any person or persons having an interest therein be cited and directed to appear and show cause why it should not be decreed; and that defendant funds be forfeited to the United States; and that thereafter it be disposed of

according to law; and for such other and further relief as this case may require.

Dated: June 4, 2018

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: [signature]

BONNIE A. GLOBER
Florida Bar No. 0748307
Assistant United States Attorney
United States Attorney's Office
300 N. Hogan Street, Suite 700
Telephone: (904) 301-6300
Fax: (904) 301-6310
E-mail:bonnie.glober@usdoj.gov

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Ashley Wilson, declare under penalty of perjury that:

I am a Special Agent with United States Immigration and Customs Enforcement, Homeland Security Investigations. I have read the foregoing Verified Complaint for Forfeiture *In Rem* and have personal knowledge that the matters alleged as fact in the Complaint are true.

I have acquired my knowledge in this matter through my personal experience, observation, investigation, and training, and from witnesses, records, and other law enforcement officers.

Executed on this 1st day of June, 2018.

ASHLEY WILSON
Special Agent
Homeland Security Investigations

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

3:18 CV 714-J-32JBT

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff ____________
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bonnie A. Glober, U.S. Attorney's Office, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202 (904) 301-6300

**DEFENDANTS**

$54,540.00 IN UNITED STATES CURRENCY

County of Residence of First Listed Defendant ____________
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☒ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
21 U.S.C. 881(a)(6)

Brief description of cause:
civil forfeiture in rem

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____________ DOCKET NUMBER ____________

DATE 6/4/18 SIGNATURE OF ATTORNEY OF RECORD Bonnie A. Glober

**FOR OFFICE USE ONLY**

RECEIPT # — AMOUNT 0 APPLYING IFP — JUDGE 32 MAG. JUDGE JBT