UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO. 3:18-cv-714-J-32JBT

$54,540.00 IN UNITED STATES CURRENCY,

Defendant.
______________________________/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Claimant Bernardo Fernandez's Motion to Dismiss ("Motion") (Doc. 9) and the Government's Response thereto (Doc. 13). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 14.) For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED**, and that Claimant be directed to answer the Verified Complaint for Forfeiture *In Rem* ("Verified Complaint") (Doc. 1) within fourteen days from the Court's order on this Report and Recommendation.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

## I. Background

The Government initiated this forfeiture action on June 4, 2018 by filing the Verified Complaint pursuant to 21 U.S.C. § 881(a)(6), which generally concerns drug transactions. (Doc. 1.) The Government alleges that the $54,540.00 at issue is traceable to the exchange of a controlled substance, or was intended to be exchanged for a controlled substance, in violation of 21 U.S.C. §§ 841 and 846. (*See id.*) On July 13, 2018, Claimant filed a Verified Claim for Seized Property (Doc. 6), asserting an interest in Defendant Funds and claiming that the property "is his lawfully obtained personal property." (*Id.* at 1.) Claimant now moves to dismiss the Verified Complaint, arguing that the Government fails to state a claim upon which relief can be granted.[2] (*See* Doc. 9 at 1.)

## II. Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the Verified Complaint sets forth sufficient factual allegations to establish a claim upon which relief can be granted. "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

Civil forfeiture actions are governed by the Civil Asset Forfeiture Reform Act

---

[2] Alternatively, Claimant requests "an adversarial evidentiary hearing . . . to challenge" the Verified Complaint. (Doc. 9 at 1.) However, Claimant cites no support for such a hearing and the undersigned is aware of none.

of 2000 ("CAFRA"), codified in part at 18 U.S.C. §§ 981 and 983. Both CAFRA and the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") set out the pleading requirements specific to civil forfeiture actions. Pursuant to Supplemental Rule G(2)(f), a civil forfeiture complaint must, in addition to other requirements, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." At trial, the Government "must prove by a preponderance of the evidence that Defendant Funds are subject to forfeiture *. . . ." United States v. $22,900.00 in U.S. Currency*, Case No. 8:14-cv-467-T-30MAP, 2014 WL 3809175, at *1 (M.D. Fla. Aug. 1, 2014) (quotations omitted). Property is subject to forfeiture when "there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); *see $22,900.00 in U.S. Currency*, 2014 WL 3809175, at *2 ("Plaintiff has no burden upon pleading to establish that the funds at issue are connected to a specific drug transaction.").

When determining whether the government has satisfied the above standard, a court will consider the "totality of the circumstances" and "evaluate the evidence presented with a common sense view to the realities of normal life." *United States v. $183,791.00 in U.S. Currency*, 391 F. App'x 791, 794 (11th Cir. 2010) (quotations omitted).[3] In viewing the circumstances in totality, a court will "not try to pick them

[3] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point. Rule 32.1 of the Federal Rules of (continued...)

off, one by one, by conjuring up some alternative hypothesis of innocence to explain each circumstance in isolation." *United States v. $242,484.00*, 389 F.3d 1149, 1167 (11th Cir. 2004).

Notably, CAFRA "eliminated the requirement that the government plead facts sufficient to establish probable cause and established that the government need only satisfy [Supplemental] Rule E(2)(a)." *$22,900.00 in U.S. Currency*, 2014 WL 3809175, at *1 (quotations omitted). Supplemental Rule E(2)(a) requires that the complaint "state the circumstances from which the claim arises with such particularity that the . . . claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Although this standard is higher than the pleading requirements under the traditional rules, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); *see* Fed. R. Civ. P., Supp. R. G(8)(b)(ii).

**III. Allegations of the Verified Complaint**

According to the Verified Complaint, on November 13, 2017, Claimant was traveling from Jacksonville, Florida to Seattle, Washington. (Doc. 1 at 5.) During a pre-flight passenger screening at the Jacksonville International Airport, an x-ray

---

[3](...continued)
Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

machine revealed an anomaly in Claimant's carry-on luggage. (*Id.* at 4–5.) Transportation Security Administration ("TSA") Officers opened the luggage and discovered concealed currency. (*Id.* at 5.)

When questioned by a Jacksonville Aviation Authority Police Department ("JAAPD") Officer, Claimant explained that he flew from Seattle to Jacksonville to purchase a 2018 Dodge Challenger. (*Id.*) However, due to mechanical issues with the vehicle, he did not purchase it. (*Id.*) Claimant informed the officer that he had approximately $15,000 in his bag. (*Id.*) Claimant stated that the money came from a bank, but also that his family gave him some of the money. (*Id.* at 6.) However, the officer noted that the packaging of the currency was inconsistent with the way banks bundle currency. (*Id.*) For example, he noted that the currency, which was wrapped in different colored rubber bands, included multiple bundles of various denominations, some of which were concealed in Claimant's socks. (*Id.* at 6–7.) There was also one large, vacuum-sealed bag of $20.00 bills. (*Id.* at 6.) Further, after Claimant voluntarily allowed a JAAPD detective to view messages on his cellular phone, the detective saw that Claimant sent a text message saying (paraphrased) "I told them it was $15,000, but it is probably more like $30,000.00." (*Id.* at 8.) It was later determined that Claimant had been carrying $54,540.00. (*Id.* at 9.) A narcotics detection canine then conducted a "four envelope line up," a type of narcotics money sniff, and identified the odor of narcotics only on the envelope containing Claimant's currency. (*Id.* at 8–9.)

Further investigation revealed that Claimant received large cash deposits into his bank accounts from various cities and states across the United States. (*Id.* at 10–11.) From March 2017 through June 2017, Claimant received twenty-nine cash deposits from individuals in Florida, Illinois, Minnesota, and Nevada, totaling $108,509.00. (*Id.* at 11.) During this time period, Claimant made twenty-one cash withdrawals totaling $108,020.00. (*Id.*) Claimant made each withdrawal on the same day, or within a couple of days, of each deposit. (*Id.*) The Government alleges that this type of activity, known as a funnel account, is typically associated with the sale, purchase, and distribution of marijuana. (*Id.*)

Additionally, phone records indicate that the name and address associated with the phone number Claimant provided to law enforcement do not belong to Claimant. (*Id.* at 12.) The Government alleges that it is common for narcotics traffickers to list names and addresses other than their own on their cell phone accounts in order to avoid law enforcement detection. (*Id.*) Finally, the Government alleges that in multiple Drug Enforcement Administration ("DEA") and Homeland Security Investigations ("HSI") criminal investigations, Florida has been the confirmed destination for marijuana grown in Washington. (*Id.*)

**IV. Analysis**

Based on the totality of the alleged circumstances, the undersigned recommends that the Verified Complaint supports a reasonable belief that the Government will be able to meet its burden of proof at trial. These allegations

include the large quantity of currency concealed in Claimant's bag; the bundling of various denominations of currency using different-colored rubber bands and a vacuum-sealed bag; Claimant's implausible story regarding why he traveled to Jacksonville and his misstatement about the amount of currency; the detection of the odor of narcotics on Claimant's currency by a narcotics detection dog; the multiple cash deposits into, and cash withdrawals from, Claimant's bank accounts from cities across the United States; the different name and address on the cell phone account associated with Claimant's phone number; and Florida being a confirmed destination for marijuana grown in Washington. Thus, the undersigned recommends that the Motion be denied.

In the Motion, Claimant argues essentially that each allegation in the Verified Complaint, picked apart and standing alone, is insufficient to meet the standard set forth above.[4] However, as previously stated, the Court must consider the allegations collectively. Moreover, even assuming that each allegation, standing alone, may be insufficient to establish a reasonable belief, each of the allegations that Claimant takes issue with weigh in favor of denying the Motion. Thus, the undersigned

---

[4] Claimant argues that the pleading standard of Supplemental Rule G(2) requires that the Verified Complaint contain "sufficient facts to provide a reasonable belief that . . . the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance." (Doc. 6 at 3.) However, "CAFRA eliminated the requirement for the government to plead facts sufficient to establish probable cause." *$22,900.00 in U.S. Currency*, 2014 WL 3809175, at *3. Nevertheless, the undersigned recommends that the probable cause standard would be met if that was the appropriate standard.

recommends that Claimant's arguments be rejected.

First, Claimant argues that the quantity of currency seized "must not be permitted to support Plaintiff's declaration of reasonable suspicion." (Doc. 9 at 5.) Although Claimant correctly states that possession of a large amount of currency does not in and of itself indicate that the money is linked to an illegal drug transaction, transporting a large amount of currency is "highly probative of a connection to some illegal activity." *United States v. Currency*, *$21,175.00 in U.S.*, 521 F. App'x 734, 739 (11th Cir. 2013) (quotations omitted).

Additionally, Claimant argues that the Government fails to allege how the manner in which the currency was bundled creates a reasonable basis to believe the Government will meet its burden at trial. (Doc. 9 at 5–6). However, the Verified Complaint alleges that the manner in which the currency was bundled "was not consistent with the way banks bundle currency for customers," even though Claimant stated that he "got the money from the bank." (Doc. 1 at 6.) Further, courts have considered the manner in which currency is bundled when determining whether the Government met its burden at trial. *See United States v. $242,484.00*, 389 F.3d 1149, 1167 (11th Cir. 2004) (considering, in addition to other factors, that the currency was rubber-banded and wrapped in cellophane and Christmas packaging in affirming district court's judgment of forfeiture).

Further, Claimant argues that the Verified Complaint does not allege that the narcotics detection canine that detected the odor of narcotics was properly trained.

(Doc. 9 at 6.) However, the Verified Complaint does indicate that the canine was properly trained, alleging that "Canine 'Kona' was trained to detect several different types of narcotics, including marijuana." (Doc. 1 at 9.) Moreover, "Claimant's questioning the sufficiency of the dog's training is irrelevant as such an inquiry would require the Court to consider facts outside of the pleading [at the motion to dismiss stage]." *$22,900.00 in U.S. Currency*, 2014 WL 3809175, at *3. Additionally, "the Eleventh Circuit views a narcotics dog alert as a fact weighing in favor" of forfeiture. *Id.* at *3 (quotations omitted). In short, "the United States' allegation of the positive K–9 alert tends to support a reasonable belief that the United States will meet its burden at trial." *United States v. $2,000,000.00 in U.S. Currency*, 906 F. Supp. 2d 1260, 1264 (M.D. Fla. 2012).

Claimant also argues that his explanation regarding why he was traveling with the currency should not be considered when determining whether a reasonable belief exists. (Doc. 9 at 7–8.) However, courts can consider the inconsistencies in or implausibility of a claimant's story when determining whether the Government has met its burden of proof at trial. *See Currency, $21,175.00 in U.S.*, 521 F. App'x at 740 (affirming the district court's finding that a combination of factors, including the implausibility of the claimant's explanation for his travels, was sufficient to establish that the currency was subject to forfeiture).

Finally, Claimant argues that the Court should "heavily discount" the Verified Complaint's allegations regarding Florida being a destination for marijuana grown

in Washington. (Doc. 9 at 8.) However, courts have considered whether a claimant was traveling on a known drug route when determining whether forfeiture was supported. *See $242,484.00*, 389 F.3d at 1167 (considering, among other factors, that the claimant was traveling on a major drug route in affirming a judgment of forfeiture).[5]

In sum, the undersigned recommends that the allegations of the Verified Complaint establish a reasonable belief that, at trial, the Government will be able to prove by a preponderance of the evidence that Defendant Funds are subject to forfeiture, and that Claimant's arguments to the contrary be rejected.

## V. Conclusion

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 9**) be **DENIED**.

2. Claimant be directed to answer the Verified Complaint (Doc. 1) within fourteen days from the Court's order on this Report and Recommendation.

[5] Notably, Claimant does not even attempt to address the large cash deposits into, and withdrawals from, his bank accounts.

**DONE AND ENTERED** at Jacksonville, Florida, on November 21, 2018.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record